**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 18, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BIODIVERSITY CONSERVATION
ALLIANCE; GEORGE
WUERTHNER,

     Plaintiffs - Appellants,

AMERICAN LANDS ALLIANCE,

     Plaintiff,

v.

BUREAU OF LAND
MANAGEMENT, an agency within
the Department of Interior; KEN
SALAZAR, in his official capacity as
Secretary of the United States
Department of Interior,

     Defendants - Appellees,

LANCE OIL & GAS COMPANY,
INC.; WESTERN GAS RESOURCES,
INC.; FIDELITY EXPLORATION &
PRODUCTION COMPANY;
WILLIAMS PRODUCTION RMT
COMPANY; PENNACO ENERGY,
INC.; MARATHON OIL COMPANY;
STATE OF WYOMING; DEVON
ENERGY CORPORATION;
ANADARKO PETROLEUM
COMPANY,

     Defendants-Intervenors -
Appellees,

No. 09-8011

WESTERN ORGANIZATION OF
RESOURCE COUNCILS; WYOMING
OUTDOOR COUNCIL; POWER
RIVER BASIN RESOURCE
COUNCIL; NATURAL RESOURCES
DEFENSE COUNCIL,

 Plaintiffs - Appellants,

JEANIE ALDERSON; WALLY
MCRAE,

 Plaintiffs,

v.

KATHLEEN CLARK, Bureau of Land
Management Director; BUREAU OF
LAND MANAGEMENT; KEN
SALAZAR, United States Department
of Interior Secretary; UNITED
STATES DEPARTMENT OF
INTERIOR,

 Defendants - Appellees,

FIDELITY EXPLORATION &
PRODUCTION COMPANY;
MARATHON OIL COMPANY;
PENNACO ENERGY, INC.;
ANADARKO PETROLEUM
CORPORATION; LANCE OIL &
GAS COMPANY, INC.; WESTERN
GAS RESOURCES, INC.; STATE OF
WYOMING; DEVON ENERGY
CORPORATION,

 Defendants-Intervenors -
 Appellees

No. 09-8013

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. No.2:04-CV-00019-ABJ and No. 2:04-CV-00018-ABJ)**

---

Michael S. Freeman of Earthjustice, Denver, Colorado, and Erik Schlenker-Goodrich of Western Environmental Law Center, Taos, New Mexico, (James Angell and Margaret Parish of Earthjustice, Denver, Colorado; Dave Bahr, Western Environmental Law Center, Eugene, Oregon, with them on the briefs), for Plaintiffs-Appellants.

Robert H. Oakley, Attorney, (John C. Cruden, Acting Assistant Attorney General, Andrew Mergen, Attorney, with him on the brief) Environment & Natural Resources Division, Washington, D.C., for the Federal Defendants-Appellees.

Charles L. Kaiser, (Charles A. Breer, with him on the brief) of Davis Graham & Stubbs LLP, Denver, Colorado, for Defendant-Intervenor-Appellee Williams Production RMT Company.

John C. Martin, (Susan Mathiascheck and Amy Chasanov, with him on the brief) of Crowell & Moring LLP, Washington, D.C., for Defendants-Intervenors-Appellees Pennaco Energy, Inc., Marathon Oil Company, and Devon Energy Corporation.

Jon Metropoulos and Dana Hupp of Gough Shanahan Johnson & Waterman, Helena, Montana, for Defendant-Intervenor-Appellee Fidelity Exploration & Production Company.

Jay Jerde, Deputy Attorney General and Affie Ellis, Assistant Attorney General, Cheyenne, Wyoming, for Defendant-Intervenor-Appellee State of Wyoming.

---

Before **KELLY**, **O'BRIEN**, and **HOLMES**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

In this appeal, several environmental and citizens' groups challenge a 2003

Bureau of Land Management resource management plan amendment allowing natural gas development in Wyoming's Powder River Basin. The groups argue that the Bureau violated the National Environmental Policy Act when it refused to study in detail their proposal to phase development in the Basin over decades. The district court held that the Bureau adequately considered their suggested alternative. W. Org. of Res. Councils (WORC) v. Bureau of Land Mgmt., 591 F. Supp. 2d 1206, 1228 & n.4 (D. Wyo. 2008).

We have jurisdiction under 28 U.S.C. § 1291 and affirm. The Bureau reasonably refused to give detailed study to a plan that would not meet the project's purposes.

Background

A.    Statutory Background

The Federal Land Policy and Management Act requires the Bureau of Land Management to develop resource management plans. 43 U.S.C. § 1712; 43 C.F.R. § 1601.0-5(n). A resource management plan is "designed to guide and control future management actions and the development of subsequent, more detailed and limited scope plans for resources and uses." 43 C.F.R. § 1601.0-2.

Under the National Environmental Policy Act (NEPA), the Bureau must prepare an environmental impact statement before developing or revising resource management plans. 42 U.S.C. § 4332(2)(C). An environmental impact statement

-4-

must study in detail "alternatives to the proposed action." Id. For alternatives "eliminated from detailed study," the statement must "briefly discuss the reasons for their having been eliminated." 40 C.F.R. § 1502.14(a). The Bureau then must publish a record of its decision, showing how its final decision-making process incorporated the statement's findings. 23 C. F. R. § 771.127.

## B. Administrative Background

### 1. The Bureau Decides to Revise the Powder River Basin Resource Management Plan.

During the late 1990s, federal lessees proposed drilling about 23,900 new coal bed methane gas wells in the Powder River Basin over a ten-year period. Lessees Supp. App. ("LSA") at 224, 262-63. Without new federal drilling, non-federal drilling would cause severe federal royalty losses by reducing reservoir pressure and siphoning federal gas. Id. at 12, 157-59. To consider the proposal, the Bureau agreed to prepare an environmental impact statement analyzing amending the Basin's resource management plan. See 65 Fed. Reg. 38571 (June 21, 2000); 65 Fed. Reg. 38572 (June 21, 2000).

As well as evaluating the lessees' plan, the statement would study other proposed development plans that met the Bureau's project criteria. Eligible plans first had to describe different ways for the Bureau to "provide federal minerals to meet the nation's energy needs" and to facilitate "the protection of the financial interest of the United States by preventing drainage of federal minerals" in the

project area. LSA at 263, 266, 282. Alternatives also needed to identify

"mitigation measures to address issues and conditions of approval," to assess

leasing in other areas, and to review the existing management plan. Id. at 266.

Studying these alternatives would provide "the basis to analyze and disclose the

impacts of the level of development proposed" by the lessees. Id. at 266.

### 2. The Groups Propose Phased Development.

At this time, the groups requested that the Bureau consider phased

development as an alternative to the lessees' plan. Id. at 596-630. Phased

development, as the groups defined it, clusters drilling geographically to maintain

open areas. Aplt. Br. at 14-15, 27; LSA at 599, 603-04. Drilling also proceeds a

"coal seam at a time." LSA at 599, 603-04. Developers reclaim each site "to a

pastoral landscape" before drilling in a new site. Id. at 604. Phased development

necessarily delays most drilling for "10 years to decades or longer." Id.

The groups admitted that their plan may allow other developers to drain

federal minerals. Id. at 605. But they suggested that the Bureau could reduce its

drainage losses through compensation agreements, protective wells, compensatory

royalties, unitization, and state coordination. Id. at 605-606.

### 3. The Bureau Eliminates Phased Development from Study.

The Bureau's final environmental impact statement studied in detail several

alternative development plans, including a "no-action" alternative. Id. at 217-18,

224. But the Bureau refused to give phased development detailed study. Among

-6-

the Bureau's six reasons for dropping the plan was that phased development would not meet the project's purposes. Id. at 342, 367. One group, the Wyoming Outdoor Council, protested this decision. Id. at 471-515.

### 4. The Bureau Requires Site-Specific Analyses.

The Bureau incorporated the final environmental impact statement into its 2003 Record of Decision. In itself, the new resource management plan permitted no on-the-ground activities. LSA at 385. Instead it required new site-specific NEPA analyses and approvals before any development began. Id. It also required lessees to comply with mitigation requirements. Id. at 385, 390-393.

### C. Procedural Background

In May 2003, the groups challenged the Bureau's actions in federal court. Aplt. App. at 92-144. The State of Wyoming and many Basin lessees intervened to defend the decision. Id. at 17-23. In 2008, the district court rejected the groups' claims. WORC, 591 F. Supp. 2d at 1228 & n.4. Among other things, it held that the Bureau adequately considered phased development. Id. The groups appeal but one issue: whether the Bureau abused its discretion when it rejected phased development as an alternative management plan. Aplt. Br. at 1-2.

### Discussion

### I. The Groups May Appeal Their Phased Development Claim.

As a threshold issue, the lessees contend that subsequent drilling mooted

-7-

phasing development in the Basin. Lessees Br. at 23-25. They alternately argue that the groups did not preserve this claim for appellate review. Id. at 25-29.

First, a case is moot if a court cannot provide "effectual relief." Chihuahuan Grasslands Alliance v. Kempthorne, 545 F.3d 884, 891 (10th Cir. 2008). The lessees have not proven mootness because undeveloped land remains in the project area and the project's ten-year time frame has not yet ended. Aplt. Reply Br. at 26-29; Lessees Br. at 24, add. 2. Even "where it is 'too late to . . . provide a fully satisfactory remedy' the availability of 'a partial remedy' will prevent the case from being moot." Utah Envtl. Congress v. Russell, 518 F.3d 817, 824 (10th Cir. 2008) (citation omitted).

Second, a party challenging an agency action must first exhaust any administrative remedies. See Dep't of Transp. v. Pub. Citizen, 541 U.S. 752, 764-65 (2004). Here, the lessees argue that every group must protest the Bureau's decision administratively. Lessees Br. at 25-29; see 43 C.F.R. § 1610.5-2(a). But because one group, the Wyoming Outdoor Council, protested the Bureau's decision, it exhausted the administrative processes for all the groups. Forest Guardians v. U.S. Forest Serv., 495 F.3d 1162, 1170 (10th Cir. 2007).

Third, a litigant who does not argue an issue in the district court may not seek appellate relief. United States v. Jarvis, 499 F.3d 1196, 1201 (10th Cir. 2007). To adequately challenge the Bureau's decision, the groups needed to show the district court the unreasonableness of the Bureau's six independent reasons for

dropping phased development.

Here, it is a close question whether the groups did so. Below, they argued only that the Bureau had the authority to impose phased development. Aplt. Supp. Reply App. at 2-27. This allegation did not directly attack any of the Bureau's six stated reasons, which were a mix of legal, policy, and factual considerations. The groups also gave phased development very little attention compared to their other claims. Since then, however, a district court in another circuit has required the Bureau to consider phased development in a separate project. N. Plains Res. Council v. Bureau of Land Mgmt., 2005 U.S. Dist. LEXIS 4678, *28-29 (D. Mont. Feb. 25, 2005). No doubt that outcome inspired the groups because they now submit lengthy appellate briefs solely discussing phased development.

Because this is a close case on forfeiture, we exercise our discretion to overlook any forfeiture of this claim. In a future appeal, we might very well deem such minimal district court argument a forfeiture. "'In order to preserve the integrity of the appellate structure, we should not be considered a second-shot forum, a forum where secondary, back-up theories may be mounted for the first time.'" Cummings v. Norton, 393 F.3d 1186, 1190 (10th Cir. 2005) (citation omitted).

## II.    The Bureau May Drop Alternatives Not Meeting Project Goals.

This court reviews the Bureau's actions de novo under the Administrative

Procedure Act (APA). Sac & Fox Nation of Mo. v. Norton, 240 F.3d 1250, 1260 (10th Cir. 2001). Under the APA, we may set aside actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983); Sorenson Commc'ns, Inc. v. F.C.C., 567 F.3d 1215, 1221 (10th Cir. 2009).

An environmental impact statement must study reasonable alternatives in detail. New Mexico ex rel. Richardson v. Bureau of Land Mgmt., 565 F.3d 683, 709 (10th Cir. 2009). Our review of a decision not to consider a particular alternative is informed by a rule of reason and practicality. Airport Neighbors Alliance, Inc. v. United States, 90 F.3d 426, 432 (10th Cir. 1996). The Bureau may eliminate alternatives that are "too remote, speculative, impractical, or ineffective," or that do not meet the purposes and needs of the project. New Mexico ex rel. Richardson, 565 F.3d at 708-09 & n.30 (citation omitted). Agencies may not define a project's objectives so narrowly as to exclude all alternatives. Davis v. Mineta, 302 F.3d 1104, 1119 (10th Cir. 2002). But where a private party's proposal triggers a project, the agency may "give substantial weight to the goals and objectives of that private actor." Citizens' Comm. to Save Our Canyons v. U.S. Forest Serv., 297 F.3d 1012, 1030 (10th Cir. 2002).

### III. The Bureau Reasonably Concluded that Phased Development Would Not Accomplish the Project's Goals.

The Bureau reasonably rejected phased development, in part, for "not meeting the Purpose of and Need for the Proposed Action" listed in the final environmental impact statement. LSA at 367.

#### A. Phased Development Would Enable, Not Prevent, Drainage.

First, to be a suitable alternative, a proposed management plan must help prevent drainage. Id. at 266. The groups claim that the Bureau unreasonably ignored ways to mitigate drainage losses during phased development. Aplt. Br. at 48-49. But the Bureau reasonably believed that none of its regulatory tools would effectively avoid these losses because each tool depends on voluntary state and private action. 43 C.F.R. § 3162.2-2; LSA at 166-68, 369, 562.

##### 1. Compensation Agreements With Non-Federal Developers.

The groups argue that the Bureau may ameliorate its losses by entering "an agreement under which the lessee and [the Bureau] receive compensation from the private developer." Aplt. Br. at 48. But the Bureau lacks the power to compel owners of state and private wells to compensate the Bureau. 30 U.S.C. §226(j). And, of course, few have an incentive to do so. LSA at 166-68, 369, 562.

##### 2. Orders for Federal Lessees to Drill Protective Wells.

Next, the groups argue that the Bureau can order a federal lessee to "'drill and produce all wells necessary to protect the leased lands from drainage.'" Aplt.

Br. at 48 (citing 43 C.F.R. § 3100.2-2). But the Bureau cannot order a lessee to drill a protective well if environmental concerns caused the Bureau to close the leasehold to drilling. See 66 Fed. Reg. 1883-01, 1886 (Jan. 10, 2001). If the Bureau could order drilling during the closed stage of phased development, it would frustrate phased development's conservation goals.

### 3. Compensatory Royalties from Federal Lessees.

The groups next claim that the Bureau can seek compensatory royalties from a federal lessee. Aplt. Reply Br. at 14. The Bureau cannot collect compensatory royalties, however, unless its lessee refuses to drill a protective well. See 66 Fed. Reg. at 1886. And the Bureau cannot demand a protective well if it cannot approve the well under a plan delaying development. See id.

### 4. Unitization.

In unit agreements, the owners of interests in a source of gas consolidate their interests, drill cooperatively, and share revenue. Amoco Prod. Co. v. Heimann, 904 F.2d 1405, 1410 (10th Cir. 1990). Because these agreements are voluntary, the Bureau is unable to require non-federal developers to enter them. See 43 C.F.R. §§ 3181.3. And because non-federal developers currently profit from existing wells, there is little to no incentive for them to enter into a unit agreement requiring delay and profit-sharing. LSA at 167.

### 5. Cooperation by the State of Wyoming.

Last, the groups would have the Bureau "work with" the State of Wyoming

-12-

to avoid losses. Aplt. Br. at 49. But the Wyoming Oil and Gas Conservation Commission (WOGCC) has no authority to reject completed applications to drill or to require state and private developers to delay development. LSA at 644. Nor does the Bureau have any other way to ensure Wyoming would cooperate.

Relatedly, the groups argue that the threat of seeking a Wyoming mandate for drilling units and pooling gives developers incentives to cooperate. Aplt. Reply Br. at 15-16. Again, the Bureau cannot compel the state to issue these orders. At best, then, this remedy is speculative.

### B.      Phased Development Did Not Help Meet National Energy Needs.

Alternative plans must also help "provide federal minerals to meet the nation's energy needs." LSA at 266. The groups argue that phased development allows for full drilling, just at a slower pace. Aplt Br. at 21. First, delaying production for decades does not effectively meet current energy demands. Second, timing is not the only difference between the proposals. Phased development will cause a significant loss of gas from drainage and changed reservoir pressure. LSA at 12, 157-59. The Bureau thus may reasonably conclude that phased development would not effectively meet this project purpose.

### C.      Phased Development Did Not Meet Other Project Purposes.

Alternative plans must also (a) identify mitigation measures and conditions of approval, (b) assess leasing in other areas, and (c) review the existing management plan. LSA at 266. The groups state that phased development meets

these purposes "necessarily" and "by definition." Aplt. Reply Br. at 19. Such allegations, made for the first time in a reply brief, do not prove that the Bureau unreasonably concluded otherwise.

**D.    The Proposal Would Not Help Identify Environmental Impacts.**

Last, an alternative plan must provide a "basis to analyze and disclose the impacts of the level of development proposed [by the companies] in the Project Area." LSA at 263, 266. The groups argue that phased development provides "a comparative basis to evaluate" these impacts. Aplt. Reply Br. at 18. But the companies' proposal was to drill wells during the next 10 years, not during the next several decades. LSA at 381. The Bureau thus could conclude that phased development was not an adequate basis of comparison.

In any case, the Bureau was right to question whether it could delay development for decades. Its lessees have the right to drill, subject only to reasonable delays. 43 C.F.R. § 3101.1-2. Making lessees wait for decades is not reasonable.

The groups cite other times when the Bureau considered phased development. Aplt. Br. at 28-30, 38-41; e.g., N. Plains Res. Council, 2005 U.S. Dist. LEXIS 4678 at *28-29. But that phased development met other projects' purposes does not mean that it met this project's purposes.

In sum, the Bureau reasonably concluded that phased development was impractical and would not meet the project's purposes. This ground is an

-14-

adequate basis for the Bureau's decision. We therefore decline to review any of the Bureau's other reasons for excluding phased development from further study.

AFFIRMED.