**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 8, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

THE ARK INITIATIVE; ALEX
FORSYTHE; PAUL SMITH,

      Plaintiffs - Appellants,

DONALD DUERR,

      Plaintiff,

v.

UNITED STATES FOREST
SERVICE; ABIGAIL R. KIMBELL,
Chief, United States Forest Service,

      Defendants - Appellees,

------------------

COLORADO SKI COUNTY USA,
INC.; NATIONAL SKI AREAS
ASSOCIATION,

      Amici Curiae.

No. 10-1473

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 06-CV-02418-WDM-MJW)**

---

Matt Kenna of Public Interest Environmental Law, Durango, Colorado, for
Plaintiffs - Appellants.

Allen Brabender (and Beverly Li of United States Department of Justice,

Environment & Natural Resources Division; Ignacia S. Moreno, Assistant Attorney General, Environment & Natural Resources Division; Lois Witte of United States Department of Agriculture, Office of the General Counsel, Golden, Colorado, on the brief), Washington, D.C., for Defendants - Appellees.

Ezekiel J. Williams and Steven K. Imig of Ducker, Montgomery, Lewis & Bess, P.C., Denver, Colorado, for Amici Curiae.

Before **KELLY**, **SILER**[*], and **MATHESON**, Circuit Judges.

**KELLY**, Circuit Judge.

Plaintiffs-Appellants Ark Initiative, Alex Forsythe, and Paul Smith appeal from the district court's judgment in favor of the Defendants-Appellees, the U.S. Forest Service and its Chief. The district court upheld the Defendants' acceptance of the 2003 Master Development Plan ("MDP"), as well as a National Environmental Policy Act ("NEPA") analysis, and decisions concerning the 2006 Snowmass Ski Improvements Project ("Improvements Project"). On appeal, Plaintiffs argue that the Defendants violated NEPA by approving the project without examining certain cumulative effects— namely, effects on water resources, endangered fish, forest habitats, and "other resources." The Defendants counter that Plaintiffs have failed to exhaust these claims, given a significantly different argument on appeal, but that, in any event, NEPA does not

---

[*] The Honorable Eugene E. Siler, Jr., United States Circuit Court Judge, Sixth Circuit, sitting by designation.

require a federal agency to examine the cumulative effects of its proposed action with those of an unrelated proposal where the proposed action will not affect the resource concerns pressed by the Plaintiffs. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm based upon a failure to exhaust.

Background

The Snowmass Ski Area occupies land within the White River National Forest near Aspen, Colorado. The Aspen Skiing Company operates the ski area pursuant to a long-term special use permit issued by the U.S. Forest Service. Aplee. Supp. App. 122-30. This permit requires Aspen Skiing to submit MDPs to the Forest Service that outline any envisioned future improvements and expansion plans to the resort or surrounding areas. Aplee. Supp. App. 128.

In 1994, the Forest Service issued a Final Environmental Impact Statement ("1994 EIS") based on a 1991 MDP, Aplt. App. 74-76, as well as a Record of Decision ("1994 ROD") approving parts of the MDP based on the 1994 EIS, and disapproving of other portions of the MDP. Aplt. App. 77-79; Aplee. Supp. App. 10-34. In 1995, the Forest Service consulted with the United States Fish and Wildlife Service ("USFWS") regarding the effect of the proposed MDP actions on threatened or endangered species, as required by Section 7 of the Endangered Species Act (ESA), 16 U.S.C. § 1536. The USFWS issued a Biological Opinion ("1995 BiOp") that concluded that the proposed projects

would likely affect certain protected fish but also listed alternative actions to mitigate these consequences. Aplt. App. 80-82.

In 2000, the USFWS listed the Canada lynx as "threatened." In 2002, the USFWS conducted another ESA Section 7 consultation and released another BiOP ("2002 BiOp") based on changes to the Forest Service's Land and Resource Management Plan. Aplt. Appx. 83-88. The 2002 BiOp stated that the changes to the Forest Plan would "not jeopardize the continued existence of the Canada lynx" but would "adversely affect" the lynx. Aplt. App. 83. Again, the USFWS suggested mitigation measures and made recommendations.

In 2003, Aspen Skiing submitted a Master Plan Amendment to the Forest Service ("2003 MPA"). Aplee. Supp. App. 131-83. The 2003 MPA proposed improvements such as replacement of ski lifts at Snowmass, expansion and addition of ski trails, expansion of snowmaking facilities, and construction of a new complex at the Base Village—the Base Village Project ("BVP"). Id. On May 2, 2003, Aspen Skiing sought to follow through with three of the outlined projects: (1) the Sam's Knob express lift installation and grading project; (2) the Burnt Mountain trail development; and (3) the Big Burn lift replacement and realignment. Aplee. Supp. App. 6-9. Collectively, these three projects are referred to as the Snowmass Ski Area Improvements Project ("Improvements Project"). All of the proposals, except one egress trail under the Burnt Mountain project, Aplee. Supp. App. 8, were previously evaluated under the 1994 EIS and

approved in the 1994 ROD.

The Forest Service issued a Draft Environmental Assessment ("2004 Draft EA") in December 2004 and a Decision Notice ("2004 DN") and Finding of No Significant Impact ("2004 FONSI") on March 25, 2005. Aplt. App. 167; see Ark Initiative v. U.S. Forest Service, No. 06-cv-02418-WDM-MJW, 2010 WL 3323661, at *3 (D. Colo. Aug. 18, 2010). The 2004 Draft EA and 2004 FONSI were rescinded, Aplt. App. 94, and a second Draft Environmental Assessment was issued on July 20, 2005 ("2005 Draft EA"). Aplt. App. 95. The 2005 Draft EA considered the Burnt Mountain and Big Burn projects; the Sam's Knob project had been approved under the 1994 plan. Aplt. App. 95. Messrs. Schlesinger, Smith, Duerr, and Forsythe submitted comments on the 2005 Draft EA, requesting that the Forest Service prepare an additional EIS, Aplt. App. 96, 98, 103, 106, and urging the Forest Service to address the cumulative impacts of all of the 2003 MPA proposals. Aplt. App. 98, 99, 100, 105. The NEPA analysis omitted certain aspects of the 2003 MPA, including the BVP and the Elk Camp Project ("ECP"). The ECP proposal was submitted after the projects at issue, and was considered separately in 2006.

In February 2006, the Forest Service issued a Final Environmental Assessment ("2006 Final EA") including action alternatives, Aplee. Supp. App. 57-105, and a Decision Notice ("2006 DN") and Finding of No Significant Impact ("2006 FONSI"). Aplee. Supp. App. 43-55. The 2006 DN authorized one

downhill ski run and egress trail on the Burnt Mountain project, authorized the Big Burn project, and reaffirmed the 1994 decision on the Sam's Knob Express Lift and Summit Re-grade project. Aplee. Supp. App. 43-55.

Plaintiffs filed a Notice of Appeal with the Forest Service on April 10, 2006, challenging the 2006 Final EA, 2006 DN, and 2006 FONSI. Aplt. App. 124-51. The Deputy Regional Forester denied all claims except requiring further NEPA analysis before construction of the skier egress trail in the Burnt Mountain Roadless Area. Aplt. App. 155-56. Plaintiffs filed an action for agency review on September 8, 2006, in the District of Columbia. The case was transferred to the District of Colorado on December 4, 2006.

In the district court, Plaintiffs filed an amended complaint asserting five claims: (1) the Improvements Project violated NEPA and the Administrative Procedure Act (APA); (2) the 2003 MPA violated NEPA and the APA; (3) the agency's response to certain Public Records Requests violated NEPA, the Freedom of Information Act (FOIA), and the APA; (4) the Improvements Project violated ESA and the APA; and (5) the 2003 MPA violated ESA and the APA. See Ark Initiative, 2010 WL 3323661, at *4.

The district court held that claim (3), concerning requested records, was waived because the Plaintiffs' opening brief and proposed order failed to address it. See id. Considering the remaining claims, the district court held that the 2003 MPA was not final agency action so the court had no jurisdiction to review the

action, id. at *5-6, and that acceptance of the 2003 MPA did not trigger ESA Section 7 obligations.  Id. at *6-8.  Regarding the 2005 Draft and 2006 Final EA, the court held that

- the ECP was not sufficiently defined to be included in the NEPA analysis and was subject to later analysis; therefore, the agency decision was within its discretion, id. at *8;

- the agency's decision to consider the BVP as unconnected to the Improvements Project was not arbitrary or capricious given that the only connection between the two projects is ski lifts that connect the Base Village to areas examined in the EA, id.;

- the agency's analysis of the Improvements Project on elk was not arbitrary or capricious, id. at *8-10;

- the agency's failure to consider impacts on backcountry skiing was not arbitrary or capricious, id. at *10;

- the agency examined a reasonable range of alternatives in the 2006 Final EA, id. at *11; and,

- the agency's decision to consider the Burnt Mountain Egress Trail separately from the other projects was not arbitrary or capricious, id. at *11-12.

On appeal, Plaintiffs contend that the Forest Service violated NEPA by approving the Improvements Project without assessing the impacts of the BVP as a

cumulative action.  40 C.F.R. § 1508.25(a)(2), Aplt. Br. at 21-29.  Plaintiffs argue that the combined effects of the BVP and Improvements Project should be considered as affecting "water resources and endangered fish, forest habitats, and other resources[]," Aplt. Br. at 2.  Therefore, they request that the 2006 Final EA, 2006 DN, and 2006 FONSI be set aside.  Aplt. Br. at 22.

## Discussion

We review the district court's judgment under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, de novo.  Citizens Comm. to Save Our Canyons v. Krueger, 513 F.3d 1169, 1176 (10th Cir. 2008).  Agency action may be set aside only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." See id. (quoting Ctr. for Native Ecosystems v. Cables, 509 F.3d 1310, 1320 (10th Cir. 2007)).

> The duty of a court reviewing agency action under the "arbitrary or capricious" standard is to ascertain whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made.  In reviewing the agency's explanation, the reviewing court must determine whether the agency considered all relevant factors and whether there has been a clear error of judgment.

Olenhouse v. Commodity Credit Corp., 42 F.3d 1560, 1574 (10th Cir. 1994) (citations omitted).

Plaintiffs contend that the Forest Service conflated the tests for assessing a "cumulative action" with a "connected action." They argue that the agency's

ruling that the BVP and the Improvements Project are not "connected actions"—while not addressing whether they are "cumulative actions"—was arbitrary and capricious. Aplt. Br. at 26-27 ("[T]he [Forest Service] made a 'connected action' determination for its own permitting purposes under the ESA that is not the same as the 'cumulative action' issue under the NEPA.") Additionally, they argue that the Forest Service failed to consider the cumulative effects of the BVP and Improvements Project beyond the water depletion issue. Aplt. Br. at 28. Plaintiffs rely upon comment letters to the Forest Service, one of which was from Donald Duerr and alleged that the BVP "will have profound impacts on the environment in and around Snowmass, including impacts to wildlife (e.g., loss of habitat, road kill, stress from noise and increased human presence, etc.), the Colorado River ecosystem (through significant new depletions), air quality, water quality, litter, solid waste generation, visual quality, and so on." Aplt. Br. at 28 (quoting Aplt. App. 100).

Parties must "exhaust available administrative remedies before the [Forest Service] prior to bringing their grievances to federal court." See Forest Guardians v. U.S. Forest Service, 641 F.3d 423, 430 (10th Cir. 2011). The claim must have been presented "in sufficient detail to allow the agency to rectify the alleged violation." See Forest Guardians v. U.S. Forest Service, 495 F.3d 1162, 1170 (10th Cir. 2007). Additionally, "a litigant who does not argue an issue in the district court may not seek appellate relief." See Biodiversity Conservation

Alliance v. Bureau of Land Mgmt., 608 F.3d 709, 714 (10th Cir. 2010). If the claims are not preserved in the district court, they are forfeited and may not be appealed. See United States v. Jarvis, 499 F.3d 1196, 1201 (10th Cir. 2007).

Plaintiffs failed to exhaust any claims now before us on appeal at the administrative level beyond the water depletion issue. Though they did exhaust the water depletion issue, they failed to properly preserve it before the district court. We discuss each issue in turn.

A.  Exhaustion as to Cumulative Impacts Beyond Water Depletion

In the Notice of Appeal to the Forest Service, Plaintiffs generally argued that the increase in development at the BVP would deplete water from the Colorado River, threatening four endangered species of fish. Aplt. App. 128-130 ("These depletions will subject the endangered Colorado River fish to additional harm.") Id. at 130. They also argued that the BVP should have been considered a "connected action," Aplt. App. 131, a "similar action," Aplt. App. 135, or a "cumulative action," Aplt. App. 135-36; see 40 C.F.R. § 1508.25(a). Finally, Plaintiffs claimed that the Forest Service failed to assess the cumulative effects and impacts of the BVP. They stated that, "the water depletion (and other) impacts from the new Base Village are 'cumulative impacts' that must be analyzed, disclosed and considered under NEPA in the context of the Snowmass Ski Area Master Plan Amendment projects." Aplt. App. 136.

Under a section addressing the failure to mitigate impacts to lynx, Aplt.

App. 145, and a subsection addressing the proper scope of any analysis, Aplt. App. 146, Plaintiffs argued that the BVP should be a connected or cumulative action with the Improvements Project, Aplt. App. 147-48, due to cumulative impacts on "water, air quality, visual quality, road traffic, vehicle accidents and road kill, access to local health care, and so on" resulting from an increased human presence on the mountain. Aplt. App. 149. They also listed other possible effects, including effects on the lynx habitat, effects on "visual quality," and a "loss of natural qualities" and "roadless or wilderness area values." Aplt. App. 150.

In order to exhaust administrative remedies, claims cannot be "only vaguely and cryptically referred to, if at all, during the administrative appeal." See Kleissler v. U.S. Forest Service, 183 F.3d 196, 203 (3d Cir. 1999). In fact, "[c]laims not properly raised before an agency are waived, unless the problems underlying the claim are 'obvious,' or otherwise brought to the agency's attention." See Forest Guardians, 495 F.3d at 1170 (citations omitted).

In their administrative appeal, Plaintiffs exhausted the water depletion issue, but not the other issues presented here, specifically: "impacts to wildlife . . . air quality, water quality, litter, solid waste generation, visual quality, and so on." Aplt. Br. at 28. The agency appeal contained an entire section dedicated to the potential impact of the BVP on water depletion. Aplt. App. 125-31. The section discusses endangered fish, but lumps other potential resource impacts into

blanket statements like "other" impacts, Aplt. App. 136, and "other components of the environment." Aplt. App. 138. These descriptions do not present a claim "in sufficient detail to allow the agency to rectify the alleged violation." See Forest Guardians, 495 F.3d at 1170. The agency needs something more to go on, and Plaintiffs cannot merely mention broad categories of potential impacts with little or no analysis. See Dodd Ins. Servs., Inc v. Royal Ins. Co. of America, 935 F.2d 1152, 1158 (10th Cir. 1991). More explanation is necessary.

Later, in the same Notice of Appeal, Plaintiffs argued that the cumulative impacts from an "increase in skier/snowboarder numbers" due to the BVP, Aplt. App. 148, should be considered. These impacts include "impacts to water, air quality, visual quality, road traffic, vehicle accidents and road kill, access to local health care, and so on." Aplt. App. 149. In Vt. Yankee Nuclear Power Corp. v. NRDC, the Supreme Court cautioned that "administrative proceedings should not be a game or a forum to engage in unjustified obstructionism by making cryptic and obscure reference to matters that 'ought to be' considered and then, after failing to do more to bring the matter to the agency's attention, seeking to have that agency determination vacated . . . ." 435 U.S. 519, 553-54 (1978). Moreover,

> [W]hile it is true that NEPA places upon an agency the obligation to consider every significant aspect of the environmental impact of a proposed action, it is still incumbent upon intervenors who wish to participate to structure their participation so that it is meaningful, so that it alerts the agency to the intervenors' position and contentions. .

. . "Comments must be significant enough to step over a threshold requirement of materiality before any lack of agency response or consideration becomes of concern. The comment cannot merely state that a particular mistake was made . . .; it must show why the mistake was of possible significance."

Id. at 553-54 (quoting Portland Cement Ass'n v. Ruckelshaus, 486 F.2d 375, 394 (D.C. Cir. 1973)). Because claims beyond water depletion were merely included in long lists without expounding on the significance of the proposed impacts, or were only described vaguely as "other impacts," these claims were not exhausted.

B.    Preservation of Water Depletion and Agency Conflation Issues

In the district court, Plaintiffs argued,

The Forest Service's analysis for the [Improvements Project] is arbitrary and capricious and not in accordance with NEPA's "hard look" requirement. In particular, the 2005 Draft and 2006 Final EAs do not analyze the cumulative impacts of the project with other past, present and reasonably foreseeable actions, do not analyze the impacts to [e]lk, and wholly ignore the impacts of the Burnt Mountain ski trails on backcountry recreation.

Aplt. App. 200. What followed was a detailed analysis of the Forest Service's failure to take a "hard look" at the impacts on elk, Aplt. App. 203-06, and its failure to analyze the impacts of the Burnt Mountain ski trails, egress trail, and lynx mitigation measures on backcountry recreation, Aplt. App. 206-07.

Nowhere did Plaintiffs mention potential cumulative effects due to an increase in skiers on the mountain, as argued before the agency, or the failure of the Forest Service to distinguish between a "connected action" and a "cumulative action," raised here. Moreover, their district court brief only makes passing

- 13 -

reference to the water depletion issue raised on appeal. Aplt. App. 219, 336 ("The Forest Service's Amendment of the Snowmass Ski Area Master Plan constitutes 'agency action' pursuant to the ESA, thus requiring the Forest Service to conduct new, or to reinitiate, formal ESA consultation on the impacts of the Master Plan Amendment on lynx and the *four endangered Colorado river fish species*.") (emphasis added). In the reply brief, Plaintiffs addressed cumulative impacts of the BVP, but did not mention water depletion—one of the main issues on appeal.

In Biodiversity Conservation Alliance, we chose to overlook the forfeiture issue, finding a "close case" where groups challenging an agency decision failed to squarely address six independent reasons for the outcome before the district court. 608 F.3d at 714. We cautioned, however, that minimal development of an issue in the district court could well result in forfeiture in future appeals given the institutional interest of a court of appeals in not resolving issues in the first instance. Id.

In this case, Plaintiffs gave minimal, if any, attention in the district court to the claims they present on appeal. Most notably, the water depletion issue is barely addressed, as a majority of the focus is placed on the cumulative impact on the elk population, Aplt. App. 203-06, and the impact on backcountry recreation, Aplt. App. 206-07. In the opening brief before the district court, the only sentence addressing the effects of the BVP states, "Nor are the impacts from the

Base Village discussed." Aplt. App. 203. This scant discussion of the BVP appears as an afterthought, and does not meet the standard for preserving an issue for review. See Thompson R2-J School District v. Luke P., 540 F.3d 1143, 1148 n.3 (10th Cir. 2008). Furthermore, any explication of the cumulative impacts of the BVP in the district court is minimal, and the conflation issue is only mentioned briefly in the reply brief; it is not addressed in the opening brief. Aplt. App. 330. Not surprisingly, the district court never addressed the conflation issue, and only held that "the Forest Service . . . determined that [the BVP] was not a connected action, as that is defined by NEPA. . . . The Forest Service's decision to consider the Base Village Project as unconnected to the Improvements Project is not arbitrary or capricious." See Ark Initiative, 2010 WL 3323661 at *8. Because the issue was not argued in the opening brief, only raised briefly in the reply, and not discussed by the district court, we decline to address it here. See Bancamerica Comm. Corp. v. Mosher Steel of Kansas, Inc., 100 F.3d 792, 798-99 (10th Cir. 1996) ("'[W]here a litigant changes to a new theory on appeal that falls under the same general category as an argument presented at trial' or presents 'a theory that was discussed in a vague and ambiguous way' the theory will not be considered on appeal.") (quoting Lyons v. Jefferson Bank & Trust, 994 F.2d 716, 722 (10th Cir. 1993)) .

Because the issues on appeal either have not been properly exhausted before the agency or preserved before the district court, the district court's

judgment is

AFFIRMED.