**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
————————————————

DARRELL CHISSOE,

     Plaintiff - Appellant,

v.

RYAN ZINKE, Secretary of the Interior of
the United States of America,[*]

     Defendant - Appellee.

No. 16-5172
(D.C. No. 4:15-CV-00166-CVE-TLW)
(N.D. Okla.)

————————————————

**ORDER AND JUDGMENT**[**]
————————————————

Before **HARTZ**, **McKAY**, and **MATHESON**, Circuit Judges.
————————————————

Paul Chissoe applied to transfer restricted Indian land he owned (the Property)

to the Bureau of Indian Affairs (BIA) in trust. When Mr. Chissoe died, the BIA

Superintendent of the Okmulgee Agency (Superintendent) terminated his application.

His son, Plaintiff Darrell Chissoe, asked the Superintendent to reinstate the

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Ryan Zinke is
substituted for Sally Jewell as Appellee in this case.

[**] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

application and to complete the transfer.[1]  The Superintendent denied his request.

The Acting Regional Director of the BIA and the Interior Board of Indian Appeals

(IBIA) each upheld the Superintendent's denial.  Plaintiff then brought this action.

The district court affirmed the IBIA's decision.  Plaintiff appeals.  Exercising

jurisdiction under 28 U.S.C. § 1291, we affirm in part, reverse in part, and remand

for further proceedings.

## I.  BACKGROUND

### A. *The Property*

The Property, consisting of about 8.21 acres in Tulsa County, Oklahoma, was

originally allotted in 1904 to Pauline Chisholm, a full-blood member of the Creek

Nation.  Under the allotment, she owned an interest in fee subject to the restrictions

against alienation contained in the Creek Agreement and federal statutes.  *See, e.g.*,

Act of Aug. 4, 1947, 61 Stat. 731.  Mr. Chissoe inherited the Property from Pauline

Chisholm in 1976.  Because he possessed the required percentage of Indian blood,

the Property remained in restricted status.

### B.  *Administrative Proceedings Before Mr. Chissoe's Death*

Mr. Chissoe initiated the process to transfer the Property into trust status.  *See*

*generally* 25 U.S.C. § 465 (now 25 U.S.C. § 5108); 25 C.F.R. Part 151.[2]  When a

---

[1] In this order and judgment, we refer to Darrell Chissoe as "Plaintiff" and his father Paul Chissoe as "Mr. Chissoe."

[2] The BIA Regional Director questioned the adequacy of the requests to transfer the Property into trust status.  *See* Aplt. App. at 240 (noting that

2

property is taken into trust, legal title is vested in the United States for the benefit of the Indian land owner, who retains the beneficial interest.[3] Under the regulations, the Secretary of the Interior or his authorized representative is responsible for approving or denying the request for such a fee-to-trust acquisition. *See* 25 C.F.R. §§ 151.2(a), 151.9, 151.12. The Superintendent serves as the Secretary's authorized representative for this purpose.

On September 25, 2010, before the fee-to-trust process was completed, Mr. Chissoe suffered a stroke. On October 1, 2010, an Oklahoma state court appointed Plaintiff as his special guardian. The court authorized Plaintiff "to execute on behalf of Paul Eugene Chissoe the application to place the restricted property of Paul Eugene Chissoe in trust with the United States Department of the Interior Bureau of Indian Affairs." Aplt. App. at 89. Plaintiff was later appointed guardian of Mr. Chissoe's person and property.

In January 2011, Plaintiff wrote to the Realty Office to say that he "would like to begin the process of placing my property into Trust." Aplt. App. at 125. On

---

Mr. Chissoe's written application was "incomplete and Paul Chissoe did not sign or submit it to the Nation or the Agency" and that Plaintiff's written request was made on his *own* behalf, not Mr. Chissoe's). But the Secretary now concedes that a sufficient fee-to-trust request was made by or on behalf of Mr. Chissoe during his lifetime. *See* Aplee. Br. at 3-4; *see also* Aplt. App. at 279 n.7.

[3] Mr. Chissoe sought trust status so that he and his family would continue to receive certain protections associated with restricted Indian lands. *See* "Petition for Appointment of Guardian and Special Guardian," Aplt. App. at 85 ("[Mr.] Chissoe's purpose for placing the restricted property in trust was to continue to provide benefits from the restricted property to his family and to protect the property for his family.").

January 13, 2011, a Realty Assistant made an official request to the Superintendent to proceed with the fee-to-trust process. The Realty Office processed the acquisition as a discretionary acquisition under the administrative procedures outlined in 25 C.F.R., Part 151. Neither Plaintiff, Mr. Chissoe, or their attorneys appear to have objected to this procedure before the agency.

In February 2011, the Realty Office obtained a title commitment for the Property. The required notices were also sent to local and state government entities. Two submitted comments. The Superintendent gave Plaintiff until April 12, 2011, to respond to the comments. In addition, emails from March 2011 show that the Realty Office was waiting for an appraisal of the Property to complete the acquisition process. That appraisal was scheduled for completion in early May.

C. *Administrative Proceedings After Mr. Chissoe's Death*

On April 5, 2011, Mr. Chissoe died. The next day, the Realty Office wrote to the Superintendent requesting closure of Mr. Chissoe's acquisition file due to his death. The Superintendent withdrew the pending requests for a legal description, an appraisal, and other work on the application. He notified Plaintiff that the BIA had terminated its acquisition of the Property because it could not process a fee-to-trust request when the property owner was deceased.

Plaintiff's attorney wrote to the Superintendent offering to have Plaintiff execute a deed as Mr. Chissoe's personal representative to convey the Property into trust. The attorney requested immediate reinstatement of Mr. Chissoe's application and that the BIA proceed with the approval process.

4

The Superintendent refused. He explained in a letter that "restricted lands are not subject to conveyance by a personal representative," Aplt. App. at 189, and that "the BIA's regulations do not contemplate the acquisition for a deceased individual or estate" because some of the regulatory factors the BIA is required to consider "are personal to the individual for whom the land will be taken into trust and clearly require that the proposed trust beneficiary be a living person," *id.* at 190. Finally, to the extent the BIA's regulations may permit the discretionary acquisition of land in trust for a deceased individual or his estate, the Superintendent declined to exercise his discretion to approve such an acquisition.

Plaintiff appealed the Superintendent's decision to the BIA's Regional Director, stating several reasons why the Superintendent should have proceeded with a discretionary acquisition under Part 151. Specifically, he argued that (1) the applicable regulations did not require him to demonstrate marketable title to place the Property into trust; (2) even if marketable title were required, he did have marketable title to the Property because Mr. Chissoe died testate and Plaintiff was his personal representative; (3) as personal representative, Plaintiff could convey the Property into trust as part of the probate proceedings; (4) Mr. Chissoe had expressed his intention to place the Property into trust before his death through his application and therefore "the decision as to the ultimate fate of [the Property] was made prior to death," *id.* at 203; (5) the Superintendent should not have denied the application by relying solely on certain regulatory factors benefiting Mr. Chissoe as a living individual, particularly when the regulations as a whole did not expressly prohibit a conveyance

5

by a deceased individual's personal representative; and (6) policy considerations underlying the Indian Reorganization Act, which encouraged tribal ownership, called for the Property to be taken into trust even though Mr. Chissoe was now deceased.

The Acting Regional Director affirmed the Superintendent's denial. The Director reiterated that "the Bureau's regulations do not allow the acquisition of land into trust for a deceased individual or an estate" because they "are personal to the individual for whom the land will be taken into trust and clearly require that the proposed trust beneficiary be a living person." *Id.* at 241. As an additional ground for affirmance, the Acting Regional Director pointed out that under the Bureau's regulations "formal acceptance of title in trust must be accomplished by the approval of a conveyance instrument." *Id.* A conveyance instrument would have to be executed by the person with title to the property—Mr. Chissoe's heirs—and not his personal representative. *Id.* Plaintiff appealed her decision to the IBIA, which affirmed on essentially the same grounds.

## D. *District Court Proceedings*

Plaintiff then brought this action in district court, seeking review of the IBIA's decision under the Administrative Procedure Act (APA). For the first time, citing 25 U.S.C. § 2216(c), he argued that "[b]ecause the [Property] was already in restricted status, acceptance of the fee-to-trust acquisition *was mandatory*." Aplt. App. at 9 (emphasis added); *see* 25 C.F.R. § 151.10 (dispensing with certain procedures and criteria applicable to a discretionary acquisition when "the acquisition is mandated by legislation"). Alternatively, he argued that if the acquisition were

discretionary, the Secretary had decided to take the property into trust before Mr. Chissoe died and therefore 25 C.F.R. § 151.12(d)(2)(iv) required him to implement that decision by immediately issuing an appropriate instrument of conveyance. In his answer, the Secretary argued that the applicable regulations required a living applicant and proposed trust beneficiary. He did not address the § 2216(c) and § 151.12(d)(2)(iv) arguments.

The district court determined that, because no statute or regulation addressed whether the BIA could take land into trust from a deceased person or his estate, the BIA's interpretations of its regulations should be afforded substantial deference. *See* Aplt. App. at 323 (citing, among other authorities, *Auer v. Robbins*, 519 U.S. 452, 461 (1997)). It therefore affirmed the Secretary's decision. It declined to address Plaintiff's claims under 25 U.S.C. § 2216(c) and 25 C.F.R. § 151.12(d)(2)(iv), finding that Plaintiff had failed to exhaust them in the administrative process.

## II. DISCUSSION

### A. *Standard of Review*

Because this appeal arises under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706, "we take an independent review of [the Secretary's] action and are not bound by the district court's factual findings or legal conclusions." *Utah Envtl. Cong. v. Bosworth*, 439 F.3d 1184, 1188 (10th Cir. 2006) (internal quotation marks omitted). We will "set aside agency action if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* (internal quotation marks omitted); *see* 5 U.S.C. § 706(2)(A). We review de novo the district court's

7

determination of whether Plaintiff adequately exhausted his administrative remedies. *See Muskrat v. Deer Creek Pub. Sch.*, 715 F.3d 775, 785 (10th Cir. 2013).

## B. *Analysis*

Plaintiff raises four issues on appeal. First, he argues the Secretary approved the transfer of Property into trust before his father died. We disagree because only a preliminary decision had been made. Second, Plaintiff argues the Secretary erred in determining that the Plaintiff as personal representative held insufficient title to convey the Property into trust. This argument does not overcome the Secretary's reasonable interpretation of the applicable regulations that the land can be transferred to trust only when the property owner is alive. Third, Plaintiff argues that the Secretary was required to approve the transfer under 25 U.S.C. § 2216(c) and that the district court should not have rejected this argument as administratively unexhausted. We remand for further consideration of this issue. Fourth, Plaintiff argues the district court should have allowed him to supplement the administrative record. We invite the district court to revisit this issue in light of the remand we order. We will discuss each of these issues in turn.

## 1. **Secretary's Alleged Approval of the Acquisition Before Death**

Plaintiff argues the Secretary made a binding decision to acquire the property in trust by January 2011, before Mr. Chissoe died. The district court concluded this claim was unexhausted, but the Secretary has briefed it on the merits, and the claim is sufficiently related to those presented in the administrative proceedings to satisfy the exhaustion requirement. *See Forest Guardians v. U.S. Forest Serv.*, 641 F.3d 423,

430-31 (10th Cir. 2011) (en banc) (per curiam) (discussing scope of issues presented to agency for administrative exhaustion purposes); *see also* Def.'s Response Br., Aplt. App. at 302 ("*[B]efore* a decision could be issued to either approve or deny the application, Paul Chissoe passed away." (emphasis added)). Accordingly, we will discuss the merits of this claim.

Plaintiff relies on a memorandum dated January 27, 2011, from the Superintendent to the Office of the Field Solicitor, in Tulsa, stating that "[a] preliminary decision has been made to acquire this property in trust." Aplt. App. at 131. But this memorandum refers only to a preliminary decision. Compliance with additional regulatory mandates was required before a final acquisition could be approved and implemented. Indeed, the memorandum specifically refers to one such mandate: obtaining a preliminary title opinion. *See* 25 C.F.R. § 151.13(b) (permitting Secretary to require evidence of satisfactory title before finally approving acquisition). As explained above, these procedures were not completed before Mr. Chissoe's death. Plaintiff therefore cannot bypass the issue of whether the Secretary can approve a post-mortem transfer under the Part 151 procedures by asserting that a final, pre-mortem decision had already been made.

2. **Secretary's Alleged Requirement Regarding Title to Complete the Transfer After Death**

Addressing the Secretary's alternate basis for denying the application, Plaintiff argues the Secretary erred in determining that Mr. Chissoe's personal representative, as opposed to an heir, held insufficient title to convey the Property into trust. He

9

cites 25 C.F.R. § 151.14, which states: "Formal acceptance of land in trust status shall be accomplished by the *issuance or approval* of an instrument of conveyance by the Secretary as is appropriate in the circumstances." (emphasis added). He reasons that because the Secretary *himself* may *issue* an instrument of conveyance, the Secretary may approve an instrument signed by a personal representative. *See* Aplt. Opening Br. at 8-9.

But § 151.14 does not discuss whether it is "appropriate" for the Secretary to issue an instrument of conveyance on behalf of a deceased person. More important, the Secretary interprets the regulation to allow acceptance of land into trust only for a living property owner.

Plaintiff also cites a portion of 25 U.S.C. § 465 (transferred to 25 U.S.C. § 5108), which states:

> The Secretary of the Interior is authorized, in his discretion, to acquire, through purchase, relinquishment, gift, exchange, or assignment, any interest in lands, water rights, or surface rights to lands, within or without existing reservations, including trust or otherwise restricted allotments, whether the allottee be living or deceased, for the purpose of providing land for Indians.

He notes this language has been construed broadly to permit acquisition of restricted Indian lands by condemnation, where no deed is involved. *See United States v. 29 Acres of Land*, 809 F.2d 544, 545 (8th Cir. 1987). He also cites an IBIA decision approving a gift deed of restricted land after the Indian donor's death. *See Estate of Mary Dorcas Gooday*, 35 IBIA 79 (IBIA 2000). But the Part 151 regulations specifically govern this case not the statute or cases Plaintiff cites.

10

Although § 5108 and the Part 151 regulations do not state explicitly whether the Secretary can take property into trust for a deceased individual, the Secretary adopted a reasonable interpretation of the regulations to prohibit such a fee-to-trust transfer. The regulations require, among other things, that the Secretary consider the applicant's "need . . . for additional land," 25 C.F.R. § 151.10(b), and "the amount of trust or restricted land already owned by or for that individual," *id.* § 151.10(d). The Secretary reads these requirements as requiring that the applicant be living at the time of the agency's decision. Plaintiff has failed to mount an effective challenge to this interpretation. We discern no reason to reject the agency's interpretation of the regulations to forbid a transfer into trust from a deceased individual Indian or his estate.

## 3. **Section 2216(c) Argument**

The Secretary contends that Plaintiff's § 2216(c) argument must fail because it was not presented in the administrative proceeding. As a general rule "[p]arties must exhaust available administrative remedies before the [Secretary] prior to bringing their grievances to federal court." *Ark Initiative v. U.S. Forest Serv.*, 660 F.3d 1256, 1261 (10th Cir. 2011) (internal quotation marks omitted); *see* 25 C.F.R. § 151.12(d) (requiring exhaustion of administrative remedies in connection with acquisition decision). This requires the plaintiff to present his claim "in sufficient detail to allow the agency to rectify the alleged violation." *Ark Initiative*, 660 F.3d at 1261 (internal quotation marks omitted).

The Secretary is correct that Plaintiff failed to present his § 2216(c) claim in the administrative proceedings. But Plaintiff argues the district court should have

11

reached the merits because: (1) exhaustion of administrative remedies is an affirmative defense, which the Secretary waived by failing to raise it in district court; and (2) exhaustion was not required because his § 2216(c) claim involves solely statutory interpretation, concerns a mandatory duty, and requires no special administrative expertise.[4]

Before reaching those arguments, we first must determine whether failure to exhaust the § 2216(c) claim deprived the district court of jurisdiction.

a. *Is exhaustion a jurisdictional requirement for the § 2216 (c) claim?*

"Courts have recognized two types of exhaustion requirements: jurisdictional exhaustion and non-jurisdictional exhaustion." *Kan. ex rel. Kan. Dep't for Children & Fam. v. SourceAmerica*, 874 F.3d 1226, 1246 (10th Cir. 2017). If exhaustion of the § 2216(c) claim here is a jurisdictional requirement established by Congress, it controls the subject-matter jurisdiction of the district court and this court, and Plaintiff's claim cannot survive his failure to exhaust. *See id.* ("Jurisdictional exhaustion is rooted in Congress's power to control the jurisdiction of the federal

---

[4] Plaintiff also argues that the exhaustion doctrine simply does not apply to his § 2216(c) claim. That claim, he argues, was "jurisdictional," so he could never have waived the claim at any stage of the proceedings, even if he failed to exhaust it. Plaintiff appears to contend that because the mandate to acquire the property under § 2216(c) is non-discretionary, the statute imposes a jurisdictional requirement on the Secretary that the federal courts must enforce, whether or not he brought that claim to the Secretary's attention. But this argument seems to confuse the statutory standard that governs how the Secretary should exercise his authority with a reviewing court's jurisdiction over the acquisition proceedings. Plaintiff fails to convince us that his § 2216(c) claim implicates subject-matter jurisdiction in this way. *Cf. Muskrat*, 715 F.3d at 783-84 (explaining difference between "elements of a cause of action" and "true jurisdictional limitations" (internal quotation marks omitted)).

12

courts . . . and requires a court to dismiss for lack of subject-matter jurisdiction whenever there has been a failure to exhaust." (internal quotation marks omitted)). On the other hand, if the exhaustion requirement is non-jurisdictional, Plaintiff may be able to invoke prudential exceptions to overcome lack of exhaustion. *See id.* at 1246-47 (describing nature and purposes of non-jurisdictional exhaustion).

We asked the parties to brief this jurisdictional issue. The Secretary presented two arguments that the exhaustion requirement is jurisdictional. Neither is persuasive. We conclude the exhaustion requirement here is non-jurisdictional and is subject to prudential exceptions.

i. *Davis v. United States* and Supreme Court Direction on Jurisdiction

The Secretary relies on *Davis ex. rel. Davis v. United States*, 343 F.3d 1282 (10th Cir. 2003), in which we affirmed a district court's jurisdictional dismissal of a claim for BIA benefits for failure to exhaust. Since *Davis*, however, the Supreme Court has further explained the test to be applied in determining whether an exhaustion requirement is jurisdictional. *Davis* did not have occasion to apply this test. Following the Supreme Court's direction leads us to conclude the exhaustion requirement here is non-jurisdictional.

As the Supreme Court explained in *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145 (2013), "[t]o ward off the profligate use of the term 'jurisdiction,' we have adopted a readily administrable bright line for determining whether to classify a statutory limitation as jurisdictional." *Id.* at 153 (internal quotation marks omitted). Under this test, a court must "inquire whether Congress has clearly stated that the

rule is jurisdictional; absent such a clear statement . . . courts should treat the restriction as nonjurisdictional in character." *Id.* (brackets and internal quotation marks omitted). This rule applies in determining whether a particular exhaustion requirement is jurisdictional. See *SourceAmerica*, 874 F.3d at 1247.

Applying the test here, we note the Secretary has not pointed to any statutory statement by Congress making administrative exhaustion of Plaintiff's claim under § 2216(c) a jurisdictional prerequisite to judicial review. Nor have we located such a statement. The APA cannot itself serve this function, for "judicial exhaustion requirements under the APA are prudential only." *M2Z Networks, Inc. v. FCC*, 558 F.3d 554, 558 (D.C. Cir. 2009). Under the Supreme Court's analysis, exhaustion here is not a jurisdictional requirement.

### ii. Secretary's finality argument

The Secretary also argues we lack jurisdiction because there was no final decision regarding application of § 2216(c) to this case. The Secretary correctly states that under the APA only final decisions are subject to judicial review. He also correctly states that an agency may control the finality of its decisions through its regulations, s*ee* 5 U.S.C. § 704 (requiring litigant to exhaust administrative appeals to obtain a final, reviewable decision, if the agency requires such an appeal by rule and "provides that the action . . . is inoperative" pending the administrative appeal). The Secretary points to a BIA regulation requiring litigants to exhaust their administrative appeals, *see* 25 C.F.R. § 2.6, and then argues that the Plaintiff did not obtain a final decision on his § 2216(c) claim.

14

Apart from whether the Secretary may properly equate lack of exhaustion with lack of finality, the problem with his argument is that the BIA reached a final decision. It did so when the Acting Regional Director ruled on Plaintiff's appeal. The omission of an argument from that appeal does not create a jurisdictional defect based on "lack of finality." The issue remains one of exhaustion.[5]

We conclude that the exhaustion requirement here is non-jurisdictional and is subject to prudential exceptions. We turn to Plaintiff's arguments concerning exhaustion.

b. *Plaintiff's Prudential Arguments About Exhaustion*

Plaintiff makes two arguments to overcome his failure to exhaust the § 2216(c) issue in the administrative proceedings. As we explain below, we remand to the district court to consider both arguments.

First, Plaintiff argues the Secretary waived the argument that Plaintiff failed to exhaust the § 2216(c) issue in the administrative proceedings because the Secretary did not make this argument in district court. The district court raised the exhaustion issue sua sponte, but it is unclear whether it did so due to concern about its subject matter jurisdiction or for some other reason. We are reluctant to resolve the Plaintiff's waiver

---

[5] To the extent the Secretary argues that the procedures under § 2216(c) are so conceptually or legally distinct from the procedures under Part 151 that Plaintiff needed an entirely separate, final decision addressing the § 2216(c) issue to satisfy the APA's finality requirement, we disagree. The Part 151 regulations, which Plaintiff invoked here, specifically incorporate procedures for mandatory acquisitions, such as those under § 2216(c). *See* 25 C.F.R. § 151.10 (requiring Secretary to give notice "unless the acquisition is mandated by legislation" and to consider certain criteria when "the acquisition is not mandated").

argument without the benefit of a more complete understanding of the district court's position on this matter, especially in light of our determination that the exhaustion question is nonjurisdictional.

Second, Plaintiff argues that his failure to exhaust should be disregarded because the § 2216(c) issue involves solely a question of statutory interpretation. Our response to this argument requires some background and discussion. *See, e.g.*, *Sinclair Wyo. Ref. Co. v. United States EPA*, 874 F.3d 1159, 1169 n.6 (10th Cir. 2017).

Although *Sinclair* reaffirmed this exception to exhaustion, "the mere fact that a complaint raises questions of statutory interpretation . . . does not exempt the action from the exhaustion doctrine." *St. Regis Paper Co. v. Marshall*, 591 F.2d 612, 614 (10th Cir. 1979). A challenge to a regulation, for example, may require consideration of its application to a specific set of facts, "so that the ultimate judicial review, if necessary, will be facilitated by a complete administrative record." *Id.* The "executive and administrative autonomy" promoted by the exhaustion doctrine "is particularly pertinent where the function of the agency and the particular decision sought to be reviewed involve exercise of discretionary powers granted the agency by Congress, or require application of special expertise." *McKart v. United States*, 395 U.S. 185, 194 (1969).

Despite these limitations on the exception, we think it may apply here. Section 2216(c) provides:

16

> An Indian . . . in possession of an interest in trust or restricted lands, at least a portion of which is in trust or restricted status on November 7, 2000, and located within a reservation, may request that the interest be taken into trust by the Secretary. *Upon such a request*, the Secretary *shall forthwith take such interest into trust.*  (emphasis added)

Because Mr. Chissoe was an Indian who possessed an interest in land that was in restricted status on November 7, 2000, most of the § 2216(c) elements were satisfied.  But to qualify for mandatory acquisition under § 2216(c), the Property must be "located within a reservation." *Id.*  The Secretary contends this issue cannot be determined as a matter of law by a reviewing court, but requires agency expertise. *See* Aplee. Br. at 20-21.  Plaintiff argues to the contrary. *See* Aplt. Reply Br. at 2-8.

We recently determined that Congress has not disestablished the Creek Reservation. *Murphy v. Royal*, 866 F.3d 1164, 1233 (10th Cir.), *amended on denial of reh'g en banc*, 875 F.3d 896 (10th Cir. 2017).  Mr. Chissoe's land appears to be located within the traditional boundaries of the Creek Reservation and may therefore have qualified for immediate and mandatory trust acquisition under § 2216(c).[6] Because the district court applied its exhaustion analysis sua sponte, Plaintiff did not have the opportunity to argue, and the district court did not address, whether exhaustion should be excused under the prudential statutory interpretation exception. Nor did the district court decide whether the claim required only statutory interpretation.

---

[6] Even if disestablished, the former Creek reservation lands may have qualified as an "Indian reservation," at least for purposes of Part 151. *See* 25 C.F.R. § 151.2(f).

17

* * * *

The parties should be provided the opportunity to present their arguments concerning the exhaustion requirement, including applicable prudential exceptions, to the district court in the first instance. We therefore remand for further analysis of the exhaustion issue and for any appropriate further proceedings.[7]

4. **Supplementation/Completion of Agency Record**

Finally, Plaintiff challenges the district court's denial of his motion to complete the administrative record. In district court, Plaintiff sought to include within the administrative record four documents showing that the fee-to-trust process began earlier than indicated in the IBIA decision. The district court determined that these documents were not part of the administrative record, and therefore treated his motion as one to supplement the record. Plaintiff then argued that these documents fell within various exceptions to the general rule that judicial review is limited to the record before the agency at the time of its decision. *See Am. Mining Cong. v. Thomas*, 772 F.2d 617, 626 (10th Cir. 1985) (describing exceptions). The district court determined that none of the cited exceptions applied. Its ruling relied primarily on Plaintiff's failure to show that the documents were relevant to review of the IBIA's decision.

---

[7] The Secretary presents other arguments to support the district court's exhaustion decision. Because these arguments were not made before the district court, we decline to consider them. *See United States v. Mora*, 293 F.3d 1213, 1216 (10th Cir. 2002) (our "general rule [is] that we do not address arguments presented for the first time on appeal").

Plaintiff argues on appeal that the documents "should have been part of the record from the beginning." Aplt. Opening Br. at 19. In light of the remand we order and the potential need to address the § 2216(c) issue on the merits, the district court should revisit this issue.

## CONCLUSION

We affirm the district court's judgment in part, reverse in part, and remand for further proceedings in accordance with this order and judgment.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge