**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**March 18, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

HIGHLANDS RANCH
NEIGHBORHOOD COALITION, a
Colorado non-profit corporation,

     Plaintiff - Appellant,

v.

JOHN M. CATER, in his official capacity
as the Division Administrator, Colorado
Division of the Federal Highway
Administration; FEDERAL HIGHWAY
ADMINISTRATION; SHOSHANNA
LEW, in her official capacity as the
Executive Director of the Colorado
Department of Transportation;
COLORADO DEPARTMENT OF
TRANSPORTATION,

     Defendants - Appellees.

No. 19-1190
(D.C. No. 1:16-CV-01089-RM)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **BACHARACH**, and **EID**, Circuit Judges.
_____

This appeal considers whether defendants-appellees, the Colorado Department

of Transportation and the Federal Highway Administration ("the Agencies"), violated

the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 *et seq.*, and the

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Administrative Procedure Act (APA), 5 U.S.C. § 551 *et seq.*, by implementing only short-term measurements to assess the noise impact of a highway-expansion project. For the following reasons, we affirm the district court's order approving the Agencies' decision.

## I.

Colorado is expanding a state highway through the southwestern part of the Denver metropolitan area. Because the expansion project involves federal funds, the Agencies must comply with applicable federal law. Specifically, NEPA regulations require the Agencies to perform an Environmental Assessment ("EA") to determine whether noise from the expanded highway would significantly impact the surrounding areas. 40 C.F.R. § 1501.5; *see also WildEarth Guardians v. Conner*, 920 F.3d 1245, 1251 (10th Cir. 2019) (requiring an agency to submit an assessment of any action that may affect the environment, unless the answer to the initial inquiry of "whether the proposed action will significantly affect the environment" is "immediately apparent").

To complete this assessment, Federal Highway Administration regulations direct the Agencies to follow Colorado's state-specific guidelines for evaluating noise levels. *See* 23 C.F.R. § 772.7(b) (requiring state-highway agencies to develop and implement noise-evaluation policies consistent with federal regulations). These state-specific guidelines, found in Colorado's 2015 Noise Analysis and Abatement Guidelines ("the Guidelines"), require the Agencies to (1) identify the areas that will be affected by traffic noise, (2) evaluate the noise using Traffic Noise Model (TNM)

software, and (3) validate the TNM with noise measurements. *See* App'x Vol. VI at 1282–92.

At the heart of this dispute is step three: noise validation. The Agencies determined that sections 3.2.2 and 3.3 of the Guidelines permitted validation of the TNM using short-term noise measurements. Section 3.2.2 addresses modifications to existing roadways, and it requires the Agencies to perform at least two noise measurements. This section does not require a particular measurement method; instead, it requires only that the measurements "best illustrat[e] the existing traffic noise environment." *Id.* at 1288. Section 3.3 explains that in order to optimize the TNM's ability to "determine the worst-hour existing noise levels and predict . . . future noise levels," field measurements are compared to the TNM's results. *Id.* Taking these sections together, the Agencies determined that short-term noise measurements would best represent traffic noise.

After performing only short-term measurements, the Agencies drafted an EA concluding that noise-mitigation measures would be needed only in select areas along the highway. The Agencies then submitted the EA for public comment. During this comment period, the public raised concerns about noise mitigation. In response, the Agencies conducted long-term noise measurements. The Agencies did not incorporate the long-term measurements in the final assessment, but they noted that the results from the long-term measurements did not necessitate any changes. After the close of the public-comment period, the Agencies released a Finding of No

Significant Impact ("FONSI") with respect to the traffic noise and continued with the expansion project.[1]

Plaintiff-appellant, the Highlands Ranch Neighborhood Coalition ("the Coalition"), is a group of residents who live in the areas along the highway that will not receive noise-mitigation measures. The Coalition contends that the Agencies' decision to use only short-term noise measurements violated NEPA. Specifically, the Coalition points out that the Guidelines contain a 2006 Traffic Noise Model Users Guide ("the Users Guide") and argues that section 4.0 of the Users Guide requires both short- and long-term noise measurements to validate the TNM. Accordingly, the Coalition sought judicial review of the Agencies' EA and FONSI.

The district court determined that the Agencies could rely on only short-term noise measurements but needed to provide a rational basis for doing so. The district court then issued two remand orders instructing the Agencies to outline and support their rationale for using short-term measurements. After the second remand, the district court affirmed the Agencies' decision and determined that the Users Guide was discretionary "by its own terms." App'x Vol. V at 953. Thus, the Agencies need only "*consider*[]" the Users Guide. *Id.* at 950 (emphasis in original). Because the

---

[1] Under NEPA, if an agency's EA indicates that the proposed action will not significantly impact the environment, the agency issues a FONSI. 40 C.F.R. §§ 1501.6(a), 1508.13. If the EA concludes that the proposed action will significantly impact the environment, the agencies must prepare an environmental impact statement, which requires more extensive analysis than the EA. *Id.* §§ 1501.5(c)(1), 1502 (detailing requirements for impact statements).

Agencies showed that they considered the Guide, the district court affirmed.  The Coalition appeals.

## II.

The Coalition argues that the Agencies' decision to use only short-term noise measurements violated NEPA.  Because NEPA does not provide a private right of action, we evaluate the Agencies' NEPA compliance according to the APA.  *See High Country Conservation Advocs. v. U.S. Forest Serv.*, 951 F.3d 1217, 1222 (10th Cir. 2020).  Under the APA, we review the district court's decision de novo and set aside the Agencies' NEPA determination only if it "fails to meet statutory, procedural or constitutional requirements, or . . . is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *Id.* (quoting *N.M. Cattle Growers Ass'n v. U.S. Fish & Wildlife Serv.*, 248 F.3d 1277, 1281 (10th Cir. 2001)).

We apply this standard "by asking whether [the Agencies'] method of analyzing environmental effects 'had a rational basis and took into consideration the relevant factors.'"  *WildEarth Guardians*, 920 F.3d at 1257 (quoting *Utah Shared Access All. v. U.S. Forest Serv.*, 288 F.3d 1205, 1212–13 (10th Cir. 2002)).  Ultimately, we are concerned only with whether the Agencies made a reasoned decision, not whether the Agencies made the best decision.  *See High Country Conservation Advocs.*, 951 F.3d at 1223.  In performing this review, "we accord agency action a presumption of validity; the burden is on the petitioner to demonstrate that the action is arbitrary and capricious."  *Copar Pumice Co. v.*

*Tidwell*, 603 F.3d 780, 793 (10th Cir. 2010).

The Coalition challenges the Agencies' decision to use only short-term measurements on two grounds. First, the Coalition argues that the Agencies' decision to use only short-term measurements contravenes section 4.0 of the Users Guide. Second, the Coalition argues that the Agencies' decision is not adequately supported by the record.

**a.**

The Agencies relied on sections 3.2.2 and 3.3 of the Guidelines to perform only short-term measurements, but the Coalition does not address these sections. Instead, it focuses on the Users Guide, arguing that the Guide and the Guidelines "must be read together." Aplt. Br. at 18. Specifically, the Coalition points to section 4.0 of the Users Guide, which provides three "levels of validation" for validating the TNM: (1) measurement results from similar projects, (2) short-term noise measurements, and (3) short- and long-term measurements. App'x Vol. VI at 1356. Section 4.0 then states that the third level applies to "large corridor projects." *Id.* Therefore, the Coalition reasons, because the highway expansion is a large-corridor project, the Users Guide requires both short-term and long-term measurements, and the Agencies' failure to conduct both types of measurements was arbitrary and capricious.

The Agencies do not dispute that the documents can be read together. Instead, the Agencies argue—consistent with the district court's order—that the Users Guide is discretionary, not mandatory. For support, the Agencies note that the introduction

to the Users Guide states that it "provides recommendations on the application of the [TNM]" and also describes section 4.0 as providing "[r]ecommendations." *Id.* at 1331. The Agencies also point out that section 4.0 frames the validation levels as items "to consider," not as binding requirements. *Id.* at 1356. On reply, the Coalition does not address these arguments. Instead, the Coalition argues that if the Agencies are not required to follow the validation methods in the Users Guide, then the Guide becomes "essentially worthless." Reply Br. at 13.

In our view, the Agencies accurately represent that the Guide provides recommendations, not requirements. The Coalition does not dispute the plain meaning of the Users Guide or explain why the methods laid out in the Guide should be treated as requirements. Accordingly, the Coalition has not carried its burden of showing that the Agencies acted arbitrarily and capriciously by declining to follow the discretionary Users Guide.

**b.**

Since the Users Guide is discretionary, the remaining question is whether the Agencies put forth enough evidence to justify performing only short-term measurements. To answer this question, we ask whether the decision "had a rational basis and took into consideration the relevant factors." *WildEarth Guardians*, 920 F.3d at 1257 (quoting *Utah Shared Access All.*, 288 F.3d at 1212–13).

The Coalition does little to undermine the Agencies' decision. The Coalition repeatedly notes that the Agencies had to follow state-specific guidelines for noise evaluations. But the Coalition does not dispute that the Agencies did, indeed, follow

7

Colorado's guidelines.  As a result, the Coalition's point about state-specific guidelines does nothing to satisfy its burden of showing that the Agencies acted arbitrarily and capriciously.

The Coalition also argues that the Agencies acted arbitrarily and capriciously by ignoring the Users Guide.  But the record belies this assertion.  The Agencies did consider the Users Guide; in fact, they described it as a "reference document" when responding to public comments on the expansion.  App'x Vol. I at 137.  The Coalition inaccurately equates the Agencies' decision not to follow the Users Guide with a decision to completely ignore the Guide.

Next, the Coalition argues that the Agencies' decision to rely on only short-term testing cannot be well-founded because the Users Guide is an authoritative document that was developed after four years of studying noise-evaluation measures.  But our concern is whether the Agencies' provided a well-reasoned decision, not whether it implemented the best method.  *See WildEarth Guardians*, 920 F.3d at 1256–57.

The Agencies argue that the short-term measurements from sections 3.2.2 and 3.3 of the Guidelines follow more recent methodology and guidance from the Federal Highway Administration.  For support, the Agencies point to the declarations of Jordan Rudel, a Region 1 Environmental Program Manager at the Colorado Department of Transportation, and Lawrence Sly, a Senior Project Manager at Jacobs Engineering.  According to both Rudel and Sly, short-term noise measurements accurately provide data for highways with consistent traffic flow.  Additionally,

Stephanie Gibson, an Environmental Program Manager at the Federal Highway Administration's Colorado Vision Office, stated in her declaration that the Users Guide served a limited purpose: to provide "'standard validation practices' . . . only if the model fails to validate in any given noise analysis." App'x Vol. V at 1039. The Coalition does not respond to this testimony beyond reiterating its position that the Agencies cannot justify deviating from the mandatory Users Guide.

The Agencies' action withstands our de novo review. The use of short-term measurements comports with the plain language of the Guidelines and the Users Guide. It is also substantiated by declarations confirming that short-term noise measurements are appropriate. Accordingly, the Agencies' explanation for the use of short-term measurements was neither arbitrary nor capricious.

### III.

Because the Coalition failed to show that the Agencies acted arbitrarily and capriciously by evaluating the highway noise using short-term measurements, we AFFIRM the district court.

Entered for the Court

Allison H. Eid
Circuit Judge

9